KELLUM, Judge.
The appellant, Patrick Napolean Smith, was convicted of one count of murder made capital because it was committed during a first-degree robbery, see § 13A-5-40(a)(2), Ala.Code 1975, and one count of murder made capital because it was committed during a first-degree kidnapping, see § 13A-5-40(a)(l), Ala.Code 1975. The jury voted 8 to 4 in favor of life imprisonment, and the trial court sentenced Smith to life imprisonment without the possibility of parole.
The evidence presented by the State demonstrated the following pertinent facts. On the morning of August 12, 2003, the body of Jeremy Black was found near the Interstate Steel facility in Trinity. The body was lying on the gravel driveway of an abandoned house off Old Trinity Road. During its investigation, the Morgan County Sheriffs Department learned that this house was commonly used for drug sales and prostitution.
Medical examiners determined that Black’s death was caused by multiple gunshot wounds. The examination of his body indicated that Black had been shot nine times; seven gunshots had been feed into Black’s chest, exiting through his back, and two gunshot wounds had been fired into Black’s back, exiting through his chest. The two gunshot wounds to Black’s back were described as “contact wounds,” meaning the barrel of the gun was pressing against his skin when the gun fired. A small copper bullet fragment was recovered from Black’s lung, and one intact copper-jacketed bullet was recovered from one of the exit wounds on Black’s back. At the time his body was found, Black was wearing two t-shirts, a pair of boxer shorts, and one sock.
Tammy Sly, a firearms and tool-marks examiner with the Alabama Department of Forensic Sciences, examined bullets and cartridge cases recovered from the crime scene, bullets and bullet fragments recovered from Black’s body, and two handguns — a Ruger .45 caliber pistol and a Colt .45 caliber pistol — discovered during the State’s investigation. Sly determined that the bullets recovered from the crime scene had been fired from these two guns and the shell casings were from the Colt pistol. A bullet recovered from Black’s body during the autopsy was determined to have been fired from the Colt pistol.
Sheriff Gregory Bartlett of Morgan County oversaw the investigation of Black’s murder. Through the course of the investigation, the officers learned that Black was in the business of selling marijuana, and that he had planned to sell marijuana to Marqueze Smith and Patrick Smith the night he was murdered. Cellular telephone records for a cellular telephone belonging to Michelle Matthews, the girlfriend of Christopher Smiley, indicated that at 10:37 p.m. on August 11, 2003, calls were made from Matthews’s phone to Black’s phone, which account was in Black’s mother’s name. Multiple outgoing and incoming calls were logged between the two numbers on the report for late in the night of August 11 and early in the morning of August 12. Using the information obtained from the telephone records, *675 an investigator placed a telephone call to one of the numbers found in the call log of Black’s phone around the time of his death. The man who answered the phone identified himself as Smiley. The officer asked Smiley if he would come to the police station to speak with investigators, and Smiley complied.
Ondrama McDaniel Coffee, an acquaintance of Smith’s, testified that she saw Patrick Smith, Marqueze Smith, and Christopher Smiley at her apartment complex, the Summer Place Apartments, in the early morning hours of August 12, 2003. Coffee first saw the three men standing outside the apartment of Kristen Jones, Marqueze Smith’s girlfriend. According to Coffee, she saw Smiley’s car leave the apartment complex at approximately 1:30 a.m. She testified that she could not tell who, if anyone, was in the car with Smiley, but said that neither Mar-queze nor Patrick Smith were at the apartment complex after Smiley left.
Maggie Mae Johnson, a former girlfriend of Patrick Smith, testified that early in the morning on August 12, 2003, Patrick Smith let himself into Johnson’s apartment with a key she had given him. Smith was carrying a bag at the time. One of the guns involved in the shooting was recovered in Johnson’s apartment; Johnson testified that she did not know how the gun ended up in her apartment, nor did she know how the other items recovered from the upstairs room of her apartment, including stereo equipment and speakers from Black’s automobile, got there. Johnson testified that during that time period, only Smith and she had access to the bedroom.
Lauren Allard lived with Black at the time he was killed. On the night he was killed, Allard recalled Black’s receiving a telephone call around 10:30 p.m. or 11:00 p.m. When shown a picture of the interior of Black’s Oldsmobile Cutlass automobile, Allard explained that the stereo and speakers were missing. Allard identified the stereo equipment recovered from Johnson’s apartment as Black’s stereo equipment. Allard admitted that Black occasionally sold drugs.
On August 13, 2003, the day after Black’s body was discovered, Sheriff Bartlett, along with Investigator Terry Kelly and Sergeant John Bili of the Morgan County Sheriffs Office, arrested Smith at Johnson’s apartment, read him his Miranda[1] rights, and informed him that they wanted to talk with him about Black’s death. Sheriff Bartlett told Smith, “I need the gun,” and Smith told the officers the gun was in an upstairs room of the apartment. (R. 794.) Officer Kelly recovered the following in the closet of the room: a Ruger .45 caliber pistol; a Pioneer Premiere brand car stereo player; an Audiobox brand wooden speaker cabinet containing two 12-inch speakers; two American Pro Ban brand six-inch-by-nine-inch car stereo speakers; a Kenwood brand car stereo power amplifier; a Jensen brand 200-watt power amplifier; an owner’s manual for a 1978 Oldsmobile Cutías Sedan automobile — the brand and model of car driven by Black; an Alfa Insurance Company insurance card for the Oldsmobile sedan in the name of Connie Ann Black, Black’s mother; title to the Oldsmobile in Black’s name; a gym bag; a blue plastic bag that contained paperwork associated with Black; a pair of Nike brand tennis shoes; and some clothes.
Angela Steele, Smith’s sister, telephoned the Morgan County Sheriffs Department in August 2003 to report that she had found a pistol while moving boxes in a *676 storage room of her apartment. When the investigators searched the storage room, they recovered the following: a Colt .45 caliber pistol; a plastic bag in which the pistol was found; a pair of gloves; and a pair of work boots. Steele did not know who had stored the pistol in her apartment.
After both sides rested and the trial court instructed the jury on the applicable principles of law, the jury convicted Smith of two counts of capital murder — counts I and III — as charged in his indictment. Smith appealed.
I.
Smith argues that the verdict forms given to the jury by the trial court suggested his guilt and that his convictions should be reversed for that reason. Specifically, Smith argues that the verdict form listed “Guilty” before “Not Guilty”; thus, Smith argues, the order in which the verdicts were listed suggested his guilt.
After the charge conference, the following discussion took place outside the presence of the jury:
“[THE COURT]: And for the record, [your] objection was as to the order in which I listed the guilty and not guilty. “[Defense Counsel]: Yes, yes. And several reasons. One is that the order in which they appear on the verdict form may be taken as jurors as a comment on the — the Court commenting on the evidence. And it could be taken by the jury as an instruction that, well, I think he is guilty, so that is your first choice.
“The second objection is that in the weighing of the evidence they don’t first go to see if he is guilty, as my understanding. They first go to see if the evidence has overcome his presumption of innocence. So the first choice would be not guilty. And if they cannot arrive at that, then they start evaluating or weighing the evidence to determine whether or not he is guilty and of what charge.
“[THE COURT]: Overruled.”
(R. 1316-17.) After the trial court instructed the jury on the applicable law, Smith once again raised the issue of the order of the potential verdicts on the forms given to the jury. The trial court then gave the jury the following instruction: “For your convenience, the Court prepared for your use in the case three forms of the verdict. No inferences are to be drawn by you from the fact that the Court has supplied you with these forms or from the order in which your choices are listed on the forms.” (R. 1432.)
“A trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts in the case.” Ingram v. State, 779 So.2d 1225, 1258 (Ala.Crim.App.1999), citing Raper v. State, 584 So.2d 544 (Ala.Crim.App.1991).
We cannot assume that the jurors presumed Smith’s guilt from the order of the verdicts on the forms given to the jury by the trial court. To do so would require us to presume that the jurors completely disregarded the trial court’s supplemental instruction not to draw inferences from the order of the verdict choices listed on the forms. See, Brooks v. State, 973 So.2d 380, 409 (Ala.Crim.App.2007) (“It is well settled that jurors are presumed to follow, not disregard, the trial court’s instructions.”). Accordingly, this claim is without merit.
II.
Smith also argues that the trial court erroneously denied his motion for a judgment of acquittal with respect to both counts of capital murder. At the conclu *677 sion of the State’s case-in-chief, Smith made the following motion for a judgment of acquittal: “Judge, we make a motion for verdict of acquittal as to all three counts of the indictment.” (R. 1138.) Specifically, Smith contends that the State failed to prove that a robbery took place to support the capital robbery/murder conviction and failed to prove that the victim was abducted to support the capital kidnapping/murder conviction. Furthermore, he claims that most of, if not all, the evidence presented against him was circumstantial.
“ ‘ “ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’ ” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
“ ‘ “The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).” ’
“Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992). See also, Ward v. State, 814 So.2d 899, 908-910 (Ala.Crim.App.2000).
“ ‘ “Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.” White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). “Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.” Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).’ ”
*678 Hollaway v. State, 979 So.2d 839, 843 (Ala.Crim.App.2007). With these principies in mind, we will address the sufficiency of the State’s evidence as applied to each of Smith’s capital-murder convictions.
A.
Smith contends that the State failed to produce any evidence indicating that a robbery took place, or, assuming a robbery did take place, that Smith was somehow connected to that robbery, as required by § 13A-5-40(a)(2), Ala.Code 1975. Specifically, Smith argues that he could be connected to any robbery only by circumstantial evidence, which, he contends, is insufficient to support his capital-murder conviction.
The jury found Smith guilty of the capital offense of murder during the course of a robbery, meaning: “Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant.” § 13A-5-40(a)(2), Ala. Code 1975. “The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing.” Smith v. State, 756 So.2d 892, 938 (Ala.Crim.App.1997), quoting Hallford v. State, 548 So.2d 526, 534 (Ala.Crim.App.1988). A person commits murder if “[w]ith intent to cause the death of another person, he causes the death of that person.” § 13A-6-2(a)(1), Ala.Code 1975. A person commits robbery in the first degree if “in the course of committing a theft he ... [u]ses force against the person of the owner ... with intent to overcome [his] physical resistance or physical power of resistance; or ... [threatens the imminent use of force against the person of the owner ... with intent to compel acquiescence to the taking of or escaping with the property,” § 13A-8-3, Ala.Code 1975, and the person “[i]s armed with a deadly weapon or dangerous instrument; or ... [c]auses serious physical injury to another.” § 13A-8-41, Ala.Code 1975.
The evidence presented at trial demonstrated that Patrick Smith was with Mar-queze Smith and Christopher Smiley on the night that Black was murdered. A witness testified to seeing the three together at Summer Place apartments, and that the three were no longer seen in the complex after Smiley’s car pulled out of the parking lot. Telephone records indicated that telephone calls were placed between a cellular telephone used by Smiley and one used by Black. The police learned that Black sold marijuana on occasion and that on the night in question, he was going to sell marijuana to Marqueze Smith and Patrick Smith. Later that morning, Black’s body was found near a house known to be a rendezvous location for drug transactions. Black had been shot multiple times in the chest and in the back. The gunshot wounds indicated that Black was lying on the ground when he was shot. Black’s body appeared to have been stripped of most of his clothes. Black’s car was not parked in the vicinity and was later located in a junkyard in Trinity. One of the firearms was recovered at Smith’s sister’s residence, and the other was recovered in the closet of the residence of Smith’s girlfriend. Smith visited Johnson’s residence early in the morning of August 12, 2003, the day Black was murdered. Smith was carrying a bag when he arrived at the residence early that morning. The police investigation uncovered automobile stereo equipment that Black’s girlfriend identified as belonging to Black in the closet in Johnson’s residence where one of the firearms was recovered. More of Black’s property, including, among other things, an insurance card and *679 title for Black’s Oldsmobile Cutlass sedan, were also recovered in the same closet.
When the evidence is viewed, as it must be, in the light most favorable to the State, see Hollaway, 979 So.2d at 843, there was sufficient evidence from which the jury could find beyond a reasonable doubt that Smith carried out or participated in the robbery that formed the basis of his robbery/murder conviction. Accordingly, the trial court did not err when it denied Smith’s motion for a judgment of acquittal as to this charge.
B.
Next, Smith contends that the State failed to present evidence to support a conviction for the capital offense of kidnapping/murder pursuant to § 13A-5-40(a)(1), Ala.Code 1975. Specifically, Smith contends that “[tjhere was no evidence of any kind as to any abduction, and [sic] deportation, or any other act which would give rise to an offense for kidnapping.” (Smith’s brief, at 58.)
“To sustain a conviction under § 13A-5-40(a)(l), Ala.Code 1975, for the capital offense of murder during a kidnapping, the State must prove beyond a reasonable doubt: (1) a kidnapping in the first degree, as defined by § 13A-6-43(a), or an attempt thereof; (2) an intentional murder, as defined by § 13A-6-2(a)(l); and (3) that the murder was committed ‘during’ the course of the ‘kidnapping or attempted kidnapping.’ ”
Butler v. State, 781 So.2d 994, 997 (Ala.Crim.App.2000).
Smith was charged with capital murder committed during the course of a kidnapping because the victim was killed during his abduction and his abduction had the intent to inflict physical injury upon him. “A person commits the crime of kidnapping in the first degree if he abducts another person with intent to ... [ijnflict physical injury upon him, or to violate or abuse him sexually.” § 13A-6-43(a)(4), Ala.Code 1975. Section 13A-6-40(2), Ala. Code 1975, defines the term “abduct” as “restraining] a person with intent to prevent his liberation by either: (a) Secreting or holding him in a place where he is not likely to be found, or (b) Using or threatening to use deadly physical force.” Section 13A-6-40(l), Ala.Code 1975, defines “restrain” in the following manner:
“To intentionally or knowingly restrict a person’s movements unlawfully and without consent, so as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved. Restraint is ‘without consent’ if it is accomplished by:
“a. Physical force, intimidation or deception.... ”
Here, the State presented evidence demonstrating that Black had been shot multiple times, which was sufficient to demonstrate that Smith intended to inflict physical injury upon Black for purposes of finding a kidnapping under § 13A-6-43(a)(4). However, even viewing the evidence, as we must, in a light most favorable to the State, see Hollaway, 979 So.2d at 843, we must conclude that the State failed to present sufficient evidence from which the jury could have concluded that Smith abducted Black. Although the evidence presented at trial gave rise to the inference that Smith and his codefendants telephoned Black, arranged a meeting with him, and ultimately shot, killed, and robbed him, the State did not present evidence demonstrating that Smith “restrained” Black, as that term is defined by § 13A-6-40(l). The State did not present evidence tending to show that Smith and his codefendants restricted Black’s movements without Black’s consent by moving *680 him from one place to another or by confining him.
We are mindful that this Court cannot substitute its judgment for that of the jury. Nevertheless, the role of an appellate court is to judge whether the evidence is legally sufficient to allow submission of an issue for decision by the jury. See Hollaway v. State, supra; see also Ex parte Stewart, 900 So.2d 475 (Ala.2004) (rendering a judgment of acquittal based on a finding that State’s evidence was legally insufficient to sustain conviction). As a matter of law, the evidence presented by the State was insufficient to sustain a conviction for the capital offense of murder committed during the course of a kidnapping. Therefore, the trial court erred in denying Smith’s motion for a judgment of acquittal with respect to this charge. Accordingly, this case must be remanded for the circuit court to vacate Smith’s conviction for murder made capital because it was committed during the course of a kidnapping.
III.
Smith also argues that the trial court gave the jury an erroneous instruction after the jury asked the court a question regarding the instructions. During its deliberations, the jury asked the trial court the following question: “Can [Smith] be guilty of capital murder if he wasn’t the one who pulled the trigger? If you can’t answer the question, we may have to sit through the instructions again.” (R. 1459-GO.) The trial court then instructed the jury once again on accomplice liability and complicity. Smith did not object to the instruction given to the jury in response to its question.
“No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection.”
Rule 21.3, Ala. R.Crim. P. Accordingly, Smith’s claim that the supplemental jury instructions were erroneous was not preserved for this Court’s review, and we will not address the claim on appeal. See, Deramus v. State, 721 So.2d 239, 242 (Ala.Crim.App.1997).
IV.
Smith also argues that the trial court erred in denying his motion to suppress evidence on the grounds that the warrants underlying two of the searches were defective. Specifically, Smith argues that the first warrant, which authorized the search of Black’s vehicle, was void because it did not properly identify the owner of the vehicle to be searched and that the second warrant, which authorized the search of Smith’s residence, was void because it did not accurately describe the property to be seized.
A.
The first search warrant authorizes police to search Black’s vehicle. This search warrant reads:
“Proof and affidavit having this day been made before me, the undersigned authority, by investigator Terry Kelly showing probable cause for belief that: “Evidence connected with the murder one Jeremy McKinley Black is located in or on a vehicle owned by the deceased, to wit: a 1978 Oldsmobile Cutlass Sedan, VIN #-, Tag #-
“You are therefore, commanded, during the hours of daylight, to make an immediate search:
“A 1978 Oldsmobile Cutlass Sedan, VIN #- TAG #-, currently lo *681 cated at the Morgan County Sheriffs office secure storage facility in Decatur, Morgan County, Alabama “For the following described property, item(s) or substance(s), to wit:
“1) A cell phone, #-
“2) Any property identifiable as belonging to one Jeremy McKinley Smith
“3) Any other evidence concerning the murder of Jeremy McKinley Smith ”
(R. 63; emphasis added.)
Smith argues that there is no person named “Jeremy McKinley Smith ” associated with this case and that the warrant was thus defective because it failed to properly identify the owner of the vehicle to be searched. “ ‘ “The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort.” ’ ” Roberson v. State, 864 So.2d 379, 387 (Ala.Crim.App.2002) (quoting other cases). This warrant was sufficiently particular to direct police to the correct place to be searched. Although the warrant does misstate the victim’s name, it does so only after correctly identifying “Jeremy McKinley Black ” earlier in the warrant. Furthermore, the inclusion of the vehicle-identification number and the license-tag number sufficiently identified which particular vehicle the police needed to search.
Moreover, the accompanying affidavit did not misstate the victim’s name, and the inaccuracy in the search warrant appears to be clerical in nature. (See C. 61-62.) Because the issuing magistrate, and not the police, committed the error, the suppression of any evidence uncovered pursuant to this search warrant would “ ‘not serve the deterrent function that the exclusionary rule was designed to achieve.’ ” Ex parte Tyson, 784 So.2d 357, 364 (Ala.2000), quoting Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). Accordingly, the search warrant authorizing the search of Black’s vehicle was sufficiently specific and was not defective to the point of requiring the reversal of Smith’s conviction or the suppression of any evidence.
B.
The second search warrant authorizes police to search the residence of Patrick Napolean Smith and Novella Smith, Patrick’s mother, in connection with the murder of Jeremy McKinley Black. This search warrant reads as follows:
“Proof and affidavit having this day been made before me, the undersigned authority, by investigator Terry Kelly showing probable cause for belief that:
“Property connected with the murder one Jeremy McKinley Black is located at the residence of Novella Smith and Patrick Napolean Smith, that being-8th St., SW Apt # -, Decatur, Alabama.
“You are, therefore, commanded, during the hours of daylight, to make an immediate search of:
“The residence of Novella Smith and Patrick Napolean Smith, located at-8th St. SW, Apt. # -, Decatur, Morgan County, Alabama
“For the following described property, item(s), or substance(s), to wit:
“1) A .45 Caliber semiautomatic pistol
“2) A .45 ACP caliber full metal jacket ammunition
“[3) The search warrant lacked an item number ‘3)’.]
“4) A cell phone, #-
“5) Any property identifiable as belonging to one Jeremy McKinley Smith
*682 “6) Any other evidence concerning the murder of Jeremy McKinley Smith. ”
(C. 66; emphasis added.)
Smith argues that there is no person associated with this case named “Jeremy McKinley Smith”; thus, he argues, the warrant was invalid because it does not accurately describe the items to be seized. We find Smith’s arguments unpersuasive and meritless. The search warrant accurately describes the location to be searched — Smith’s residence — and the purpose for the search — the investigation of the murder of Jeremy McKinley Black. Like the first search warrant, the second warrant misstates the victim’s last name, but only after it correctly identifies that the search warrant was issued in connection to the murder of Jeremy McKinley Black. Also like the first warrant, the accompanying affidavit states that any evidence concerning the murder of Jeremy McKinley Black should be seized pursuant to that warrant, indicating that the second warrant also contained a clerical error like the first search warrant. Accordingly, the search warrant authorizing the search of Smith’s residence was sufficiently specific and was not defective to the point of requiring the reversal of Smith’s convictions or the suppression of any evidence.
V.
Smith also argues that his indictment was due to be dismissed as a result of the State’s alleged Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violations. Specifically, Smith argues that the State failed to promptly comply with the trial court’s discovery order and also failed to provide the defense with evidence of a plea-bargain agreement the State had made with one of Smith’s codefendants.
“ ‘Three elements must be proven in order to establish a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). These elements include 1) the prosecution’s suppression of evidence; 2) the favorable character of the suppressed evidence for the defense; and 3) the materiality of the suppressed evidence. Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97.’ ”
James v. State, 61 So.3d 332, 344 (Ala.Crim.App.2006), quoting Hendrix v. State, 589 So.2d 769, 770 (Ala.Crim.App.1991).
In Johnson v. State, [Ms. CR-99-1349, October 2, 2009] — So.3d - (Ala.Crim.App.2009), this Court explained:
“ ‘ “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” United States v. Bagley, 473 U.S. at 682, 105 S.Ct. 3375 [ (1985) ]. The same rule applies when the State discloses Brady material in an untimely manner. See Coral v. State, 628 So.2d 954, 979 (Ala.Crim.App.1992) (“Tardy disclosure of Brady material is generally not reversible error unless the defendant can show that he was denied a fair trial.” (citing United States v. Gordon, 844 F.2d 1397 (9th Cir.1988); United States v. Shelton, 588 F.2d 1242 (9th Cir.1978); Ex parte Raines, 429 So.2d 1111 (Ala.1982); and McClain v. State, 473 So.2d 612 (Ala.Crim.App.1985))).’
“[Ex parte Belisle,] 11 So.3d [323,] 330-31 [ (Ala.2008) ] (footnote omitted).
“In rejecting Belisle’s argument, which is also raised by Johnson in the present case, that the information would have enabled him to better prepare for trial, the Court stated:
*683 “ ‘ “Appellant’s argument that the information would have enabled more effective preparation for trial was rejected in United States v. Agurs, supra, 427 U.S. [97,] at 112 n. 20, 96 S.Ct. [2392] at 2401 n. 20 [ (1976) ], on the grounds that an argument could always be made that knowledge of the prosecutor’s case, both incriminating and exculpatory, would help defense counsel in preparation of the case for the defense. Therefore, the proper focus is upon the materiality in the nondisclosure or delayed disclosure of exculpatory information in determining the denial vel non of defendant’s rights of due process and fair trial....” ’
“'Ex parte Raines, 429 So.2d 1111, 1113-14 (Ala.1982). Thus, Belisle is not entitled to a new trial simply because having the proffer would have enabled him to more effectively prepare for trial.’
“11 So.3d at 331-32 (footnote omitted).” — So.3d at-.
Smith has failed to explain the nature of the evidence that was allegedly not disclosed in a timely manner. Furthermore, aside from an argument that the untimely disclosure prejudiced the preparation of his defense, Smith fails to explain how he was denied a fair trial by the alleged untimely disclosure. Accordingly, Smith has failed to present a colorable Brady violation that would merit the dismissal of his indictment.
Smith also complains that information regarding a plea-bargain agreement between the State and one of Smith’s code-fendants was never disclosed to Smith. However, nothing in the record indicates that such a deal actually existed. Furthermore, the record clearly shows that neither of Smith’s two codefendants testified against Smith at trial. Accordingly, this claim is without merit and entitles Smith to no relief.
VI.
Smith also argues that the trial court erroneously denied his Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), motion. Specifically, Smith argues that the State impermissibly struck two potential jurors based solely on the jurors’ race.
“‘The party alleging racially discriminatory use of peremptory challenges bears the burden of establishing a prima facie case of discrimination.’ ” Rogers v. State, 819 So.2d 643, 648 (Ala.Crim.App.2001), quoting Burgess v. State, 811 So.2d 557, 572-73 (Ala.Crim.App.1998). A determination regarding a moving party’s showing of intent to discriminate under Batson is “a pure issue of fact, subject to review under a deferential standard.” Armstrong v. State, 710 So.2d 531, 534 (Ala.Crim.App.1997). “After the appellant makes a timely Batson motion and establishes a prima facie showing of discrimination, the burden shifts to the State to provide a race-neutral reason for each strike.... See, e.g., Ex parte Bird, 594 So.2d 676 (Ala.1991).” Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App.1992). Once the prosecutor has articulated race-neutral reasons for the strike, the moving party can then offer evidence showing that those reasons are merely a sham or pretext. Ex parte Branch, 526 So.2d 609, 624 (Ala.1987).
“We will reverse the circuit court’s ruling on the Batson motion only if it is ‘clearly erroneous.’ Jackson v. State, 549 So.2d 616 (Ala.Crim.App.1989).” Cooper v. State, 611 So.2d at 463. “ ‘ “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court *684 on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” ’ ” Fletcher v. State, 703 So.2d 432, 436 (Ala.Crim.App.1997), quoting Davis v. State, 555 So.2d 309, 312 (Ala.Crim.App.1989), quoting in turn Powell v. State, 548 So.2d 590 (Ala.Crim.App.1988).
After voir dire, Smith made a Batson motion challenging the State’s use of peremptory strikes against potential jurors no. 28 and no. 3, and the following discussion took place:
“[Defense counsel]: The defendant is a black man. There were four blacks that I counted total on the venire. The state’s first strike struck number 28, and that was a black woman. She indicated that she knew some of the family members — I think on the jury — (inaudible).
“Number 3 in Panel 1 was the State’s eighth strike. She too was black. The state struck her. She didn’t — she didn’t have any — to my knowledge he did not have anything she attributed that would have given her a reason to be stricken.
“I believe — it is my belief the state is going to say that they prosecuted her husband. They didn’t ask her any questions about that ... her husband, but they didn’t ask for any questions about that.
“THE COURT: Denied as to number 28. All right.
“[State]: Judge, I asked them earlier of [sic] any of their family members had been arrested. She didn’t respond the first time. I found out she had been married to K.R. We prosecuted him. I asked her, and she said she hasn’t lived here long. She wasn’t truthful. I don’t think that they carried the burden anyway, but he has a prior conviction, and she hasn’t been truthful.
“Now, is she going to go home tonight and ask her husband about it and find out he knows all these people and he has been in trouble? Probably. She wasn’t truthful.
“I asked had anybody ever been arrested in your family.
“[Defense counsel]: The State could have put questions to her directly bearing on that if he was going to use that for the basis of a strike, and he did not. It may be a different K.R. or whatever — whatever his name is.
“THE COURT: All right. It is denied.” (R. 523-24.)
With respect to potential juror no. 28, the trial court denied Smith’s Batson motion without requiring a response from the State. To the extent that Smith challenges this determination, we note that the only evidence presented to the trial court by the defense was the fact that the State used its peremptory strikes to remove two of the four potential black jurors. Numbers alone, however, are not sufficient to establish a prima facie case of discrimination. See Boyd v. State, 715 So.2d 825 (Ala.Crim.App.1997), aff'd, 715 So.2d 852 (Ala.1998). There was no evidence presented indicating that any of the factors set out in Ex parte Branch, 526 So.2d 609 (Ala.1987), which may be used to establish a prima facie case, existed. Instead, in addition to his statistical showing, Smith offered only speculation as to the State’s reasons for the exercise of its peremptory challenges against juror no. 28. These arguments alone were not sufficient to prove a prima facie case of a Batson violation. Accordingly, we cannot say that the trial court erred in denying Smith’s Batson motion with respect to potential juror no. 28.
With respect to potential juror no. 3, the State argued that the potential juror’s ex-husband had been prosecuted by their office. This Court has recognized *685 that the use of a peremptory strike against a potential juror who is related to someone who has been convicted of a crime is a sufficient race-neutral justification under Batson. See, Lewis v. State, 741 So.2d 452 (Ala.Crim.App.1999) (“Striking a prospective juror because a member of the juror’s family has been convicted of a crime is a valid race-neutral reason under Batson.”). Accordingly, we cannot say that the trial court erred in denying Smith’s Batson motion with respect to potential juror no. 3.
VII.
Smith also argues that his two convictions for capital murder violate double-jeopardy principles. Our reversal of Smith’s conviction for murder made capital because it was committed during a kidnapping, see Part II.B. of this opinion, renders this claim moot.
VIII.
Finally, Smith argues that the Morgan County Sheriffs Department conducted an illegal, warrantless search of Maggie Johnson’s residence. Specifically, Smith argues that Johnson only consented to a search of her residence after Sheriff Bartlett threatened to arrest her. This specific issue was not raised at the trial court; therefore, it is not preserved for appellate review. “[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.” Merchant v. State, 724 So.2d 65 (Ala.Crim.App.1998). Moreover, Smith did not raise this objection in his motion to suppress. “The statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial.” May v. State, 710 So.2d 1362 (Ala.Crim.App.1997), quoting Jackson v. State, 593 So.2d 167 (Ala.Crim.App.1991). Accordingly, we will not address this issue on appeal.
IX.
Based on the foregoing, Smith’s conviction for the capital offense of murder made capital because it was committed during the course of a robbery is affirmed. However, for the reasons set forth in Part II.B. of this opinion, Smith’s conviction for the capital offense of murder made capital because it was committed during the course of a kidnapping cannot stand. Accordingly, we reverse that conviction and remand this case to the circuit court with instructions that it vacate Smith’s conviction for the offense of capital murder based on the kidnapping. On remand, the court shall take all action necessary to see that the circuit clerk makes due return to this Court at the earliest possible time and within 42 days of the release of this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.*
WISE, P.J., and WELCH, WINDOM, and MAIN, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 Note from the reporter of decisions: On April 16, 2010, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On June 18, 2010, that court denied rehearing, without opinion. On September 9, 2011, the Supreme Court denied certiorari review, without opinion (1091356).