COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Ortiz and Lorish
Argued at Norfolk, Virginia


STANLEY KEITH MONTGOMERY

v.        Record No. 1283-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DANIEL E. ORTIZ
SEPTEMBER 6, 2022


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
David F. Pugh, Judge Designate

David W. Anderson, II, Deputy Public Defender, for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


While restraint is inherent in any sexual battery, a perpetrator's transportation of a victim from one room to another requires distinct and additional force constituting an abduction. Stanley Keith Montgomery was convicted of aggravated sexual battery and abduction with intent to defile by a jury in the Hampton City Circuit Court. Montgomery appeals his convictions on several grounds. First, he argues that the circuit court erred in denying his motion to strike both charges because the Commonwealth failed to prove that he had the intent to sexually abuse the victim, L.S., that he seized or detained L.S., and that he had the intent to defile her. Further, he alleges the circuit court erred in denying his proffered jury instruction on the force required for abduction and in overruling his objection to the jury forms, which listed the option of "guilty" before "not guilty." Because we find that the evidence was sufficient to support the charges and the circuit court did not

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

err in refusing Montgomery's jury instruction and verdict forms, we reject Montgomery's arguments and affirm his convictions.

BACKGROUND

On or around February 14, 2020, Crystal and her husband Rayvon decided to go out for the evening. Crystal asked Montgomery, a family friend, to watch their three children, six-year-old daughter L.S., eleven-year-old son R.S, and their other daughter.[1] That evening, L.S. was sitting on the couch next to Montgomery while her brother R.S. was playing video games in front of the couch, facing the television. Montgomery started touching L.S., saying he was "going to give [her] the good feeling." At some point, R.S. turned around from the television and asked Montgomery "[w]hat's the good feeling?" In response, Montgomery massaged L.S.'s shoulders. When asked if she knew "what the good feeling was," L.S. testified that she did because "every . . . time [Montgomery] used to come over, he used to do that."

Montgomery then started rubbing L.S. on her underwear directly over her vagina[2] (first incident). Montgomery kept his hand there for a "long time." R.S. was still sitting in front of L.S. and Montgomery facing the television during this time. L.S. testified that she did not say something to her brother at this point because she was nervous and "scared inside." She could not get up and leave the couch because Montgomery was "holding [her] tight on [her] tummy." L.S. tried to get up more than once, but Montgomery told her to "stop." She told Montgomery to stop touching her multiple times.

Later that night, L.S. and R.S. fell asleep in R.S.'s room while playing video games. Montgomery carried L.S. out of R.S.'s room and put her on a chair in the living room. He then

---

[1] L.S. was eight years old at the trial.

[2] L.S. testified that she called her "front part" her "purse" and used the bathroom with it. L.S. identified her purse as the vagina on a diagram.

took L.S.'s underwear off and proceeded to lick her vagina (second incident). L.S. told Montgomery to "[p]lease stop." L.S. did not scream or call for help because she was "nervous . . . like in trouble." Montgomery then moved L.S. to the couch, where she fell asleep.

The next day, L.S. told R.S. what had happened. R.S. told her to "swear on God" that she was telling the truth, which L.S. did. Both children then told Crystal that Montgomery assaulted L.S. Crystal called Montgomery and asked him if he had touched L.S. Montgomery denied touching L.S. Crystal and Rayvon went to Montgomery's house and confronted him. Montgomery said to them, "I am sorry. I didn't mean to, man. I'm sorry." Rayvon and Crystal began to beat Montgomery, and Montgomery confessed, saying, "I'm sorry. I did not mean to do that." A few months later, Crystal reported the incident to the police.

Montgomery was indicted on one count of aggravated sexual battery and one count of abduction with intent to defile. At trial, the jury heard testimony from L.S., R.S., Crystal, and Jennifer Howe, L.S.'s forensic interviewer. At the close of the Commonwealth's evidence, Montgomery moved to strike both charges. The circuit court denied the motion. Montgomery declined to put on any evidence and renewed his motion to strike, which the court denied.

The circuit court then heard argument on the appropriate jury instructions. Montgomery requested an instruction telling the jury that if the force used to commit the aggravated sexual battery was only that necessary to complete the crime, the jury could not sustain the abduction charge. The court denied Montgomery's proposed jury instruction because it thought it was confusing. Additionally, Montgomery objected to the model verdict form listing "guilty" before "not guilty" because it implied that Montgomery was guilty. The circuit court denied Montgomery's request to list the optional verdict of "not guilty" before "guilty."

The jury convicted Montgomery of both charges. The circuit court sentenced Montgomery to thirty years' incarceration on both charges, with twenty-two years suspended, for a term of eight years' active incarceration. Montgomery timely appealed.

ANALYSIS

Montgomery's first two assignments of error address the sufficiency of the evidence to convict him of aggravated sexual battery and abduction with intent to defile. His third assigned error argues that his proffered jury instruction on incidental force was improperly denied. Montgomery's final assignment of error asserts that the model verdict form was an unconstitutional violation of his presumption of innocence.

I. Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). "[T]he evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court, in this case, the Commonwealth." *Enriquez v. Commonwealth*, 283 Va. 511, 514 (2012). Additionally, "[t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999).

"A reviewing court's responsibility in reviewing jury instructions is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Williams v. Commonwealth*, 64 Va. App. 240, 246 (2015) (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022), *petition for appeal filed*, No. 220381 (Va. June 27, 2022). "When reviewing a trial

- 4 -

court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Lawlor v. Commonwealth*, 285 Va. 187, 228-29 (2013) (quoting *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002)). However, "whether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). And "whether a defendant's due process rights are violated . . . is a question of law, to which we apply a de novo standard of review." *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013).

## II.  Aggravated Sexual Battery

Montgomery was convicted of aggravated sexual battery pursuant to Code § 18.2-67.3. Code § 18.2-67.3(A) provides that "[a]n accused is guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than 13 years of age." "Sexual abuse" is defined as "an act committed with the intent to sexually molest, arouse, or gratify any person, where:  . . . The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Code § 18.2-67.10(6). Montgomery only challenges the sufficiency of the evidence that he intended to sexually abuse L.S.

"Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Summerlin v. Commonwealth*, 37 Va. App. 288, 297 (2002) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). "Intent may be shown by a person's conduct and by his statements." *Id.* at 297-98 (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)).

The jury was entitled as the finder of fact to find L.S.'s testimony credible. *See Crawley*, 29 Va. App. at 375. Viewed in the light most favorable to the Commonwealth, there was

sufficient evidence that Montgomery intended to sexually molest, arouse, or gratify L.S. Montgomery rubbed L.S.'s vagina above her underwear, the "material directly covering such intimate parts." Code § 18.2-67.10(6). Montgomery also took off L.S.'s underwear and licked her vagina. From these actions, the fact finder could conclude that Montgomery intended to sexually molest L.S. and touch L.S.'s intimate parts or the material directly covering those intimate parts. Montgomery also told L.S. that he was "going to give [her] the good feeling." From this statement as well, the fact finder could conclude that Montgomery intended to arouse or gratify either himself or L.S.[3]

### III. Abduction with Intent to Defile

Montgomery next argues that the circuit court erred in denying his motion to strike the charge of abduction with intent to defile, because (1) the force required for the abduction was incidental to the alleged aggravated sexual battery and (2) there was insufficient evidence of Montgomery's intent to defile L.S.

Montgomery was convicted of abduction with intent to defile a person abducted pursuant to Code § 18.2-48. A defendant is guilty of abduction if he "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or

---

[3] Montgomery cites only two unpublished cases to support his argument that there was insufficient evidence of intent. *See Bynum v. Commonwealth*, No. 0854-12-1, slip op. at 4-5 (Va. Ct. App. June 4, 2013) (finding sufficient evidence of intent when the victim testified that the defendant took her to a bedroom, removed her clothes, and sexually abused her); *Hargrove v. Commonwealth*, No. 2421-92-2, slip op. at 5 (Va. Ct. App. Mar. 29, 1994) (finding sufficient evidence of intent when the victim testified that the defendant removed all of his clothes and the victim's underwear and touched the victim with an intensity and for a duration that hurt the victim). Montgomery seems to argue that his actions did not rise to the level of the acts in *Bynum* and *Hargrove*. We reject this argument. As stated above, L.S. testified that Montgomery rubbed the clothing directly covering her vagina, told her he was "going to give [her] the good feeling," and licked her vagina. That is sufficient evidence that Montgomery had the intent to molest, arouse, or gratify L.S. or himself.

conceal him from any person, authority or institution lawfully entitled to his charge." Code
§ 18.2-47(A).

## A. Incidental Force

Montgomery asserts that the alleged force he exerted was only that required to commit the aggravated sexual battery. But because the force Montgomery applied in transporting L.S. from R.S.'s bedroom during the second incident was distinct from the restraint necessary to commit the aggravated sexual battery, we reject Montgomery's argument.

"[W]hether the detention established by the evidence is 'the kind of restraint which is *an intrinsic element* of crimes such as rape, robbery, and assault' is a question of law to be determined by the court." *Lawlor*, 285 Va. at 229 (quoting *Brown v. Commonwealth*, 230 Va. 310, 314 (1985)). Therefore, "[w]e defer to the trial court's findings of historical fact, but we review *de novo* the trial court's application of those facts to the law." *Smith v. Commonwealth*, 56 Va. App. 711, 721 (2010) (quoting *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004)).

A defendant accused of abduction and another offense involving restraint arising from the same course of conduct "is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from . . . the restraint employed in the commission of the other crime." *Brown*, 230 Va. at 314. "The only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Lawlor*, 285 Va. at 225 (declining to apply the four-factor test outlined in *Hoyt*, 44 Va. App. at 494, to determine this issue).

While "some degree of *detention* [is] inherent in rape, robbery, and assault," the Supreme Court of Virginia has "not indicated that any *asportation* of the victim is similarly inherent." *Vay v. Commonwealth*, 67 Va. App. 236, 251 (2017) (quoting *Lawlor*, 285 Va. at 225 n.13).

This Court has found that slight asportation can support a separate abduction conviction because it was not inherent to the crimes of rape or attempted rape. *Massey v. Commonwealth*, 67 Va. App. 108, 116, 136 n.14 (2016) (noting that the defendant's acts satisfied the elements for abduction with the intent to defile when he dragged the victim from the door to her bed in her studio apartment); *Smith*, 56 Va. App. at 723 (holding that the defendant luring the victim into his home and bedroom based on a false impression was not inherent to the attempted rape); *Coram v. Commonwealth*, 3 Va. App. 623, 625-26 (1987) (holding that moving the victim twenty feet from her front porch to two large bushes was asportation "separate and apart" from the attempted rape because it increased the risk of harm to the victim "by decreasing the possibility of detecting [the defendant's] criminal activity").

Based on the second incident alone, the circuit court did not err in determining that Montgomery committed abduction with intent to defile because he used force to detain L.S. separate and apart from the restraint used to commit aggravated sexual battery.[4] Montgomery used force when he carried L.S. from R.S.'s bedroom to the chair in the living room. Montgomery's transportation of L.S. was sufficient to satisfy the force requirement for abduction independent of the restraint inherent in aggravated sexual battery. This force was independent of the aggravated sexual battery because Montgomery could have sexually abused L.S. without moving her from R.S.'s bedroom. But when Montgomery moved L.S. from the bedroom to the living room chair, his actions constituted a separate and greater force than the minimum restraint necessary to complete the aggravated sexual battery. Additionally, moving L.S. to the living room increased the risk of harm L.S. faced because it decreased the possibility of R.S. detecting

---

[4] Because the second incident is more than sufficient to establish Montgomery used force that exceeded the restraint necessary to commit the aggravated sexual battery, we decline to decide whether Montgomery used similar force during the first incident of sexual abuse.

Montgomery's criminal acts. Thus, the circuit court did not err in determining that Montgomery exercised force that exceeded the restraint inherent in aggravated sexual battery.

### B. Intent to Defile

There was also sufficient evidence of Montgomery's intent to defile L.S. To prove a defendant committed abduction with an intent to defile, the Commonwealth must show "that the [defendant] abducted the child with the specific intent to sexually molest her." *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994) (*en banc*). As stated above, intent is often proved by circumstantial evidence and the reasonable inferences that follow from that evidence and may be shown by the defendant's conduct and statements. *Summerlin*, 37 Va. App. at 297-98.

Here, Montgomery took L.S. from R.S.'s bedroom to the chair in the living room. Once in the living room, away from R.S. asleep in his bedroom, Montgomery licked L.S.'s vagina, sexually abusing her. The record contained sufficient evidence to support the jury's finding that Montgomery's intent when abducting L.S. and moving her from the bedroom to the empty living room was to molest her. Because the brief period between Montgomery carrying L.S. to the living room and sexually abusing her sufficiently shows Montgomery's intent to defile L.S. when he abducted her, the circuit court did not err in denying Montgomery's motion to strike.

By moving L.S. from the bedroom to the living room, Montgomery used force beyond what was necessary to commit the aggravated sexual battery. Additionally, there was sufficient evidence to find Montgomery had the intent to molest L.S. when he abducted her. Therefore, the circuit court properly denied Montgomery's motion to strike the charge of abduction with intent to defile.

### IV. Montgomery's Requested Jury Instruction

Montgomery's proffered jury instruction on whether the force was incidental to the aggravated sexual battery addressed an issue of law for the circuit court to resolve. As a result,

Montgomery's proffered instruction was not appropriate for the jury, and the circuit court did not err in denying it.

Although we review denied jury instruction challenges in the light most favorable to the proponent, a jury instruction on a question of law is never appropriate because "the trial court, and not the jury, must resolve" questions of law. *Vay*, 67 Va. App. at 255. Thus, a trial court does not err when it refuses to give a proffered instruction that raises a question of law. *Id.* at 258.

A trial court must determine whether the detention or restraint applied during a crime is "*an intrinsic element* of crimes such as rape, robbery, and assault" because it is a question of law. *Lawlor*, 285 Va. at 229 (quoting *Brown*, 230 Va. at 314) (affirming a trial court's denial of a jury instruction on the issue of intrinsic restraint).

Montgomery's proffered jury instruction asked the jury to answer a question of law, not of fact. Montgomery's proffered instruction stated, "If the incidental force exerted against a victim of a sexual battery is the force necessary to commit the sexual battery, that force is not also sufficient to sustain a conviction of abduction with intent to defile." Montgomery's proposed instruction attempts to have the jury resolve the same issue raised by his motion to strike—that the abduction could not have occurred because any force he used was incidental to the aggravated sexual battery. However, that was a question of law "to be determined by the court." *Lawlor*, 285 Va. at 229.

As discussed in Section III(A), the circuit court properly determined that Montgomery moving L.S. to the living room "exceeded the minimum necessary [force] to complete the required elements of the other offense." *Id.* at 225. Thus, the only question before the jury was whether the case facts supported the elements of abduction with intent to defile.

Because Montgomery's proffered jury instruction was a matter for the judge not the jury, the instruction was inappropriate and the circuit court did not err in denying the instruction. Therefore, we affirm the circuit court on this assignment.

## V. Verdict Form

The circuit court properly overruled Montgomery's objection to the verdict forms because the order of possible verdicts is not unduly suggestive and does not constitute a due process violation.

Montgomery essentially argues that the verdict forms violated his constitutional due process right. "A fair trial in a fair tribunal is a basic requirement of due process." *Estes v. Texas*, 381 U.S. 532, 543 (1965) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). "The presumption of innocence . . . is a basic component of a fair trial . . . ." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). A defendant is denied due process if a procedure "would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused." *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). While the actual effect of a particular procedure may be difficult to fully determine, courts can scrutinize the effects of the procedure using "reason, principle, and common human experience." *Estelle*, 425 U.S. at 504. A court looks at whether what the jurors "saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial." *Porter v. Commonwealth*, 276 Va. 203, 261 (2008). Yet our inquiry ends "if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice." *Id.* (quoting *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986)). In answering whether a practice is inherently prejudicial, we ask "whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *See id.* (quoting *Flynn*, 475 U.S. at 570).

- 11 -

Montgomery cites no authority that the order of verdicts, with no other distinguishing characteristics, violates the presumption of innocence. Montgomery cites *Atkins v. Commonwealth*, 257 Va. 160, 178 (1999), for the proposition that "it is materially vital to the defendant in a criminal case that the jury have a proper verdict form."

*Atkins* is easily distinguishable from this case. In *Atkins*, the Supreme Court of Virginia reversed the defendant's conviction, in part, because the jury verdict form omitted the possible punishment of life in prison. *Id.* Here, there are no differences between the Commonwealth's jury verdict forms and Montgomery's proffered forms, other than the order of "guilty" and "not guilty." Failure to provide the jury with an available sentence is far different from Montgomery's concern about the order of the verdicts the jury could reach.

Moreover, the verdict forms' order of verdicts did not prejudice Montgomery. The circuit court instructed the jurors during *voir dire*, and in giving the jury instructions, that Montgomery was "presumed to be innocent" throughout the trial unless he was found guilty at the end. The jury had access to the jury instructions which reminded them of his presumed innocence and the requisite burden of proof. The verdict forms listed both the options for guilty and not guilty. There are no other differences suggesting the jury choose "guilty" over "not guilty." In fact, both parties agreed that the Commonwealth's verdict forms tracked the Virginia Model Jury Instructions – Criminal. One can hardly argue that placing the option to select guilty before not guilty was so "inherently prejudicial" that it unacceptably threatened Montgomery's right to a fair trial. Additionally, Montgomery failed to show he was actually prejudiced by the verdict forms. As discussed above, the record supported Montgomery's convictions. Thus, the order of verdicts on the verdict forms was neither inherently nor actually prejudicial.

Moreover, appellate courts have addressed this issue and held that the order of possible jury verdicts on an otherwise proper form does not indicate bias or influence on a jury's verdict.

*See, e.g.*, *Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 887 (Pa. Super. Ct. 2019); *Joshua v. State*, 507 S.W.3d 861, 864 (Tex. Ct. App. 2016); *Davis v. State*, 7 A.3d 690, 705-06 (Md. Ct. Spec. App. 2010); *Smith v. State*, 79 So. 3d 671, 676 (Ala. Crim. App. 2010); *State v. Watson*, 610 S.E.2d 472, 478 (N.C. Ct. App. 2005); *Rucker v. State*, 510 S.E.2d 816, 820 (Ga. 1999).

We find no error in the circuit court's decision to use the model verdict form. Instead, the verdict forms here simply stated the two verdicts available to the jury on each charge. The verdict forms' order of verdicts alone did not bias or influence the jury's verdict and was not inherently or actually prejudicial to Montgomery.

CONCLUSION

There was sufficient evidence to convict Montgomery of aggravated sexual battery and abduction with intent to defile. Moreover, the circuit court did not err in denying Montgomery's proffered jury instruction or overruling his objection to the jury verdict forms. Therefore, we affirm Montgomery's convictions.

*Affirmed*.