The appellant, Timothy Darrell Hollaway, was convicted of two counts of unlawful possession of a controlled substance, a violation of § 13A-12-212, Ala. Code 1975; one count of attempted manufacture of a controlled substance, a violation of § 13A-12-218, Ala. Code 1975; one count of second-degree possession of marijuana, a violation of § 13A-12-214, Ala. Code 1975; one count of possession of drug paraphernalia, a violation of § 13A-12-260, Ala. Code 1975; and one count of attempting to evade a police officer, a violation of § 32-5A-193, Ala. Code 1975. For the two possession-of-a-controlled-substance convictions, he was sentenced to two five-year concurrent sentences; those sentences were split, and he was ordered to serve 2 years with the balance suspended followed by 5 years' probation. For his attempted-manufacture-of-a-controlled-substance conviction, he was sentenced to 15 years' imprisonment to run concurrently; that sentence was split, and he was ordered to serve 3 years' imprisonment with the balance suspended followed by 5 years' probation. For his possession-of-marijuana conviction, he was sentenced to 12 months' imprisonment to run concurrently. For his possession-of-drug-paraphernalia conviction, he was sentenced to 12 months' imprisonment to run concurrently. For his attempting-to-evade conviction, he was sentenced to 3 months' imprisonment to run concurrently with all of his other convictions. Mandatory statutory fines were assessed, and Hollaway was ordered to pay attorney fees and court costs.
The record established that on December 12, 2004, Deputy Doug Key of the Morgan County sheriff's office attempted to serve process in a civil matter on Timothy Hollaway at his residence at 806 Hodges Street in Hartselle. While serving the papers, he detected an odor that he recognized from his training and experience to be consistent with the manufacture of methamphetamine. Deputy Key left the residence but continued surveillance at the residence and observed a truck leaving the residence. Other officers were called to pursue the driver of the truck, Belinda Williams; those officers apprehended Williams and placed her under arrest for an outstanding warrant. Deputy Key contacted Investigator Jim England of the drug task force about the suspected illegal activity at the residence, and England obtained a search warrant for the premises.
Later that evening, Investigator England, Agent Steven Siaja, and Deputy Doug Key of the Morgan County Sheriff's Department, Lt. Rutherford and Agent Ana Franklin of the Decatur Police Department organized crime unit, and Sgt. Faron White of the Decatur Police Department executed a search warrant on Timothy Hollaway's residence. After knocking and announcing their presence, the officers forcibly entered the residence. Upon their entry, they found Hollaway and Jennifer Bradford in the master bedroom. Following Hollaway's direction, the officers found numerous precursor chemicals and items used in the manufacture of methamphetamine. Among the items found were an air purifier, a set of digital scales, extracted red phosphorous, hydrogen peroxide, coffee filters, a bottle of ether, an electric cooking plate, a bottle of tincture of iodine, sulphuric acid, a hydrogen gas generator, Coleman brand camp-stove fuel, pseudoephedrine residue, "Red Devil" brand lye, a pipe containing marijuana, a hypodermic syringe and a glass pipe containing methamphetamine, various guns, and an instruction booklet on how to manufacture methamphetamine.
At the conclusion of the search, Hollaway was arrested and taken to the Morgan County jail. After being advised of his *Page 842 Miranda[1] rights, Investigator England asked Hollaway if he wished to make a statement about the items discovered in his residence. Hollaway then made a statement that he was producing methamphetamine in the house and that all the equipment, precursor chemicals, marijuana, and drug paraphernalia belonged to him. Forensic testing was performed on the substance believed to be pseudoephedrine, which confirmed that it was indeed pseudoephedrine.
On January 5, 2005, based on information gained from a confidential informant, another search warrant was executed on Hollaway's residence by Agent Siaja, Agent Franklin, and Lt. Rutherford. Agent Siaja had gained information that there was probably a significant quantity of methamphetamine at the residence. When officers entered the residence, Hollaway was not home. When the officers stepped outside to move their vehicles, Hollaway drove past the residence and ran a stop sign in an apparent attempt to avoid whoever was at his residence. Agent Siaja gave chase, turning on his blue lights. With assistance from the Hartselle Police Department, Agent Siaja pursued Hollaway for 45 minutes, traveling at speeds between 50 and 80 miles per hour. Hollaway continued to elude Agent Siaja until he was finally forced to stop approximately one block from his residence.
Officers took Hollaway into custody and brought him inside the residence. The residence was then searched. Officers had to chisel the hinges off the safe in the master bedroom, because they did not have a key or the combination.[2] Officers found methamphetamine and 53 Xanax pills in the safe in Hollaway's master bedroom. They also discovered two ounces of marijuana, a set of digital scales, a glass pipe, and various other components consistent with the manufacture of methamphetamine in the safe. Hollaway testified that, other than law enforcement during the first search of his residence, no one had the key or combination to his safe.
On the basis of the search, Hollaway was charged with two counts of unlawful possession of a controlled substance, one count of second-degree possession of marijuana, one count of attempt to manufacture a controlled substance, and one count of unlawful possession of drug paraphernalia, together with the traffic violations of reckless driving and attempting to elude a police officer.
At trial, Hollaway testified that he had no knowledge of the purpose of the components law-enforcement officers seized from his home. He stated that the items belonged to Eric Gatlin. According to Hollaway, Gatlin had a key to the residence and had left some items in bags and boxes in the kitchen. Hollaway admitted to possession of the Xanax pills, but disputed the quantity seized. He denied possessing marijuana or drug paraphernalia.
 I.
On appeal, Hollaway claims that the trial court erred when it denied his motion for a judgment of acquittal. He appears to argue that there was insufficient evidence to submit the possession-of-a-controlled-substance, methamphetamine, and attempted-manufacture-of-a-controlled-substance counts to the jury. He contends that the State's evidence merely amounted to a prima facie case of constructive *Page 843 
possession and that it was not affirmatively proven that he was in exclusive control of the materials law-enforcement officers found in his residence.
 "`"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). `"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464
(Ala.Crim.App. 1992). `"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."' Farrior v. State, 728 So.2d 691, 696
(Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). `The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978).
 "`The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App. 1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App. 1983)."
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App. 2003) (quoting Ward v. State, 610 So.2d 1190, 1191
(Ala.Crim.App. 1992)). See also Ward v. State,814 So.2d 899, 908-10 (Ala.Crim.App. 2000).
 "`Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.' White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). `Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.' Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App. 1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala. 1985)."
White v. State, 546 So.2d 1014, 1017
(Ala.Crim.App. 1989).
As for Hollaway's claim that the verdict was against the great weight of the evidence, it is not the province of this court to reweigh the evidence presented at trial. Johnson v.State, 555 So.2d 818, 820 (Ala.Crim.App. 1989). A verdict rendered on conflicting evidence is considered conclusive *Page 844 
on appeal, provided the State establishes a prima facie case. See, e.g., Jones v. State, 719 So.2d 249, 255
(Ala.Crim.App. 1996), aff'd, 719 So.2d 256 (Ala. 1998)("Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case.").
The record contains ample evidence from which the jury could, by fair inference, find Hollaway guilty of the charged offenses. In his signed statement given to Investigator England, Hollaway admitted that the narcotics, the items used in the manufacture of methamphetamine, and the precursor chemicals found in his residence belonged to him. The methamphetamine was found in a safe in Hollaway's bedroom along with 53 Xanax pills, marijuana, and a glass pipe. At trial, Hollaway asserted that all of the contraband belonged to him. Hollaway was the only individual who had the key or the combination to the safe. Clearly, the trial court did not err when it allowed the issue of Hollaway's guilt to be submitted to the jury.
 II.
Hollaway also claims that the constitutional prohibition against double jeopardy precluded his separate conviction for multiple offenses of possession of a controlled substance, methamphetamine, and Xanax, because the offenses arose out of one single act of possession.
In Straughn v. State, 876 So.2d 492, 508
(Ala.Crim.App. 2003), this Court recognized that although certain double-jeopardy claims implicate the jurisdiction of the trial court — and are not subject to waiver — other double-jeopardy claims are singularly constitutional in nature and, thus, may be waived. In Straughn, we held that although the evidence established that the marijuana found on Straughn's property and the marijuana found growing at a neutral site were part of a single act of possession, Straughn's failure to challenge at trial whether the evidence was sufficient to establish separate acts of possession of marijuana resulted in a waiver of his double-jeopardy claim.876 So.2d at 508-09. Unlike Straughn, however, the methamphetamine and Xanax here were found in the same location — Hollaway's safe — at the same time. Moreover, although the indictment purported to allege separate offenses, it instead alleged alternative methods of committing the same offense.
In Ex parte Darby, 516 So.2d 786 (Ala. 1987), the Alabama Supreme Court recognized the basic principle that a single crime cannot be divided into two or more offenses and thereby subject the perpetrator to multiple convictions for the same offense. The Supreme Court relied on this Court's decision in Vogel v. State, 426 So.2d 863, 882
(Ala.Crim.App. 1980), aff'd in part, writ quashed in part,426 So.2d 882 (Ala. 1982), in which we stated that "[o]nce the presence of the first controlled substance is proven, the offense is complete, and the presence of other controlled substances at the same time does not act to split the possession." Because the statutory requirements constituting possession of a controlled substance pursuant to § 13A-12-212, Ala. Code 1975, contain the same elements for possession of methamphetamine and possession of Xanax, and both substances were seized by virtue of the same search, the possession of both drugs represented one single act of possession. Here, the unit of prosecution was the act of possessing any controlled substance, and the fact that law-enforcement officials discovered two different controlled substances in Hollaway's safe did not establish evidence of two separate offenses. By splitting this single act into separate offenses, Hollaway's double-jeopardy rights *Page 845 
were violated, and the jurisdiction of the trial court to enter a judgment on both counts was implicated. See, e.g.,Ex parte Robey, 920 So.2d 1069, 1071 (Ala. 2004);McPherson v. State, 933 So.2d 1114
(Ala.Crim.App. 2005). Accordingly, our holding inStraughn is not applicable to this case.
Based on the foregoing, we remand this case to the trial court with instructions that that court enter a new order adjudging Hollaway guilty of the single offense of unlawful possession of a controlled substance and sentence him for that single offense. See Ex parte Rice, 766 So.2d 143, 152-53
(Ala. 1999). We further remand this case for the trial court to set aside that part of its order imposing a $1,000 fine pursuant to the Demand Reduction Assessment Act for the attempted-manufacture-of-a-controlled-substance conviction. The Demand Reduction Assessment Act, § 13A-12-281(a), Ala. Code 1975, provides:
 "In addition to any disposition and fine authorized by Sections 13A-12-202, 13A-12-203, 13A-12-204, 13A-12-211, 13A-12-212, 13A-12-213, 13A-12-215, and 13A-12-231, or any other statute indicating the dispositions that can be ordered for such a conviction, every person convicted of a violation of any offense defined in the sections set forth above, shall be assessed for each such offense an additional penalty fixed at one thousand dollars ($1,000) for a first offense and two thousand dollars ($2,000) for a second or subsequent offense."
Because this section does not authorize an additional penalty for persons convicted of violating or attempting to violate § 13A-12-218, the trial court should not have assessed this fine in connection with Hollaway's conviction for the attempted manufacture of a controlled substance. Due return shall be filed with this Court within 28 days of the date of the opinion.
REMANDED WITH INSTRUCTIONS.*
McMILLAN, SHAW, and WELCH, JJ., concur. BASCHAB, P.J., concurs in the result.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] During the previous search, Hollaway had given law enforcement officers the combination to his safe. Precursor chemicals were found in the safe during the initial search.
* Note from the reporter of decisions: On August 17, 2007, on return to remand, the Court of Criminal Appeals affirmed, without opinion.