BURKE, Judge.
Jennifer Ann Wells [1] pleaded guilty to the unlawful possession of methamphetamine and the unlawful possession of morphine, both violations of § 13A-12-212(a)(1), Ala.Code 1975. She was sentenced to six years’ imprisonment as to each conviction, the sentences to run concurrently and to also run concurrently with the sentence in a second-degree possession of marijuana conviction to which she also pleaded guilty. She was fined $1,000, ordered to pay a drug-demand-reduetion assessment of $2,000, as well as a forensic assessment of $100.
The record indicates that Wells was indicted on four counts of possession of a controlled substance for possessing methamphetamine, morphine, diazepam, and dihydrocodeine (hydrocodone), all stemming from the same incident. She moved to dismiss the indictment, alleging that she could not be convicted of multiple offenses based on the possession of several types of controlled substances at one point in time. She claimed that her right to be protected against double jeopardy was violated, and she cited Vogel v. State, 426 So.2d 863 (Ala.Crim.App.1980), and Smith v. State, 472 So.2d 677 (Ala.Crim.App.1984), in support of her argument. She reserved the right to appeal the dismissal of her motion to dismiss the four-count indictment that contained the two counts of felony possession of which she was convicted.[2]
The parties stipulated to the facts and legal issues in this case as follows:
“On September 15, 2008, an arrest warrant for Tony Poole was executed at his residence for unlawful distribution of a controlled substance. In the process of serving this arrest warrant, narcotics evidence was observed in plain view. Tony Poole refused consent to search and a subsequent search warrant was obtained. This residence was the same residence from which Tony Poole had *157 sold methamphetamine to a Confidential Informant (Cl) at an earlier date and which led to the issuance of the arrest warrant for Tony Poole for unlawful distribution of a controlled substance. The defendant, Jennifer Ann Wells-Davis, was present when the methamphetamine was sold to the Cl and was present when the arrest warrant for Tony Poole was executed. Ms. Wells-Davis had clothes and personal property at this residence indicating that this too was her place of residence.
“Methamphetamine was discovered in plain view as well as in Poole’s pants lying on the floor beside the bed. The methamphetamine was in the same container from which Poole sold methamphetamine to the Cl. There were unknown pills as well in plain view.
“Poole was arrested on the warrant for unlawful distribution of a controlled substance as well as two charges of unlawful possession of a controlled substance and unlawful possession of drug paraphernalia, Wells-Davis was arrested for the items found in plain view and was charged with unlawful possession of marijuana in the second degree, two counts of unlawful possession of a controlled substance and unlawful possession of drug paraphernalia.
“On February 3, 2009, Wells-Davis was indicted in a four count indictment on four charges of unlawful possession of a controlled substance: Count One— methamphetamine; Count Two — morphine; Count Three — diazepam; and Count Four — dihydrocodeine.
“It is undisputed that Wells-Davis’s possession of the four controlled substances arise from the same incident and the same conduct of possession.
“On June 15, 2009, Wells-Davis, through counsel, filed a motion to dismiss the indictment alleging that Wells-Davis could not be convicted of multiple possession offenses based on the alleged possession of several types of controlled substances at one point in time. The motion was heard for argument on November 10, 2009, and Circuit Judge David A. Rains denied Wells-Davis’s motion to dismiss on June 9, 2010. On June 11, 2010, Wells-Davis filed a motion to reconsider which was denied on July 8, 2010.
“On August 6, 2010, Wells-Davis pled guilty to two counts of unlawful possession of a controlled substance reserving her right to appeal the Circuit Court’s denial of her motion to dismiss the indictment.”
(C. 10-11.)
The State argued in response to Wells’s motion to dismiss that the Alabama Court of Criminal Appeals had misinterpreted the law and the legislative intent underlying § 13A-12-212 in Hollaway v. State, 979 So.2d 839 (Ala.Crim.App.2007). The State argued that, because the statute now indicated that possession of a controlled substance referred to “a” substance, possession of each controlled substance constituted a separate offense. In Vogel v. State, the forerunner statute to § 13A-12-212 had been in effect, which made criminal the possession of any controlled substance. The State then referred to the language in Girard v. State, 883 So.2d 717 (Ala.2003), quoting McKinney v. State, 511 So.2d 220, 224-25 (Ala.1987), concerning legislative intent when language is used to proscribe the unit of prosecution, as in this case.
The trial court denied Wells’s motion to dismiss the indictment, finding that the State had correctly argued that the holding in Hollaway v. State, supra, had misinterpreted the legislative intent and thus had misapplied the law.
*158 The forerunner to § 13A-12-212(a)(1), Ala.Code 1975, was § 20-2-70(a), Ala.Code 1975, which stated:
“(a) Except as authorized by this chapter, any person who possesses, sells, furnishes, gives away, obtains or attempts to obtain by fraud, deceit, misrepresentation or subterfuge or by the forgery or alteration of a prescription or written order or by the concealment of material fact or by use of false name or giving- a false address controlled substances enumerated in schedules I, II, III, IV, and V is guilty of a felony and, upon conviction, may be imprisoned for not less than two nor more than 15 years and, in addition, may be fined not more than $25,000.... ”
(Emphasis added.) Thus, § 20-2-70(a), Ala.Code 1975, prohibited the possession of controlled substances. The language clearly states “controlled substances” in the plural. Several cases analyzed the intent of this statute in criminalizing the possession of varied controlled substances in the same transaction or at the same time.
In Vogel v. State, 426 So.2d 863 (Ala.Crim.App.1980), affirmed, 426 So.2d 882 (Ala.1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983), the co-defendants, Gerald Len Vogel and Robert Louis Vogel, were each indicted for 14 counts of possessing a number of different controlled substances that were seized at the same time from the same vehicle. Each defendant was convicted of 11 counts. Gerald Vogel was sentenced to consecutive terms of 15 and 5 years’ imprisonment, respectively, on the first 2 counts, and to 15-year terms for each of the remaining counts, to run concurrently with the initial consecutive terms. Robert Vogel was sentenced to three 15-year terms of imprisonment and one 5-year term, to be served consecutively, on the first 4 counts of his indictment, and to 15-year terms for each of the remaining counts, to be served concurrently with the consecutive sentences. The Vogels alleged that their sentences were improper under § 20-2-70(a), because the court treated the simultaneous possession of 11 different types of drugs as 11 separate possessions although “the fact of possession” was the same. Vogel v. State, 426 So.2d at 878. The State, however, argued that because the drugs were listed on different schedules and therefore required different proof for each controlled substance, the possessions could be sentenced separately without violating Vogels’ rights against double jeopardy.
In Vogel, this Court noted that a number of jurisdictions had adhered to the State’s logic and had held that “ ‘demonstrating different chemical makeups among the prohibited substances’ ” constituted different elements of proof in the offense. However, this Court determined that, according to § 20-2-70(a), only a single offense justifying a single sentence had occurred where, although several types of controlled substances were involved, they were possessed at the same single point in time and place. This Court stated:
“Our reading of § 20-2-70(a) does not disclose any such emphasis on the various schedules as a factor in the sentencing scheme, but instead only indicates that the statute prohibits the ‘possession] ... of controlled substances enumerated in schedules I, II, III, IV and V’ and makes such possession ‘of controlled substances’ to be ‘a felony’ with only one scheme of punishment [two to fifteen years, and a possible fine]. The focal point of the statute is thus the criminal act itself, whether it be possession, sale or any of the other offenses, and not in what schedules the drug or drugs are located. As our pres *159 ent statute reads, the only relevance of the schedules is to act as a definitional scheme for indicating what are ‘controlled substances,’ the possession of which is prohibited by the statute; this is further bolstered by the definition of a ‘controlled substance’ as a ‘drug, substance or immediate precursor in schedules I through V of article 2 of this chapter.’ § 20-2-2(5), Code of Alabama 1975. Clearly, the language of the statute indicates that the possession of such substances renders a defendant ‘guilty of a felony’ and not guilty of several felonies based upon how many drugs are simultaneously within the control of the defendant, or in which schedules they are listed. Once the presence of the first controlled substance is proven, the offense is complete, and the presence of other controlled substances at the same time does not act to split the possession. By applying the principles developed in our case law to the plain language of § 20-2-70(a), we thus find that the possession is the criminal offense, and our section does not sanction basing multiple prosecutions or sentences on the mere fact that several types of drugs were so possessed at one point in time. If the legislature had intended to allow such multiple prosecutions it would have certainly framed this section in language clearly manifesting such intent.”
Vogel v. State, 426 So.2d 863, 881-82 (Ala.Crim.App.1980). See also Salter v. State, 606 So.2d 209, 212-13 (Ala.Crim.App.1992) (reversing judgment dismissing a habeas corpus petition and holding that possession of two controlled substances arising out of the same incident was a single offense, citing Vogel).
In Smith v. State, 472 So.2d 677 (Ala.Crim.App.1984), Smith was indicted for possession of marijuana and possession of tablets containing pentazocine, and he was found guilty as charged in the indictments and was sentenced to concurrent 15-year sentences. Because Smith had been in possession of both the marijuana and the tablets[3] when he was apprehended, this Court determined that he had committed only one possession of controlled substances case and should have only received one sentence, and opined:
“[I]n the case of Whitaker v. State, 21 Ala.App. 114, 105 So. 433 (1925), the Court stated:
“ ‘Whether the whisky was in one place or a dozen places, if the possession was in the defendant and at the same time, the defendant could only be prosecuted for one offense. The defendant is not prosecuted on a charge of possessing any particular amount or brand of whisky, but the offense is complete when it is proven that he possessed prohibited liquor, and such prosecution covers all the whisky he possessed at that time.’
“Moreover, this court stated in Vogel that the possession of controlled substances ‘renders a defendant guilty of a felony and not guilty of several felonies based upon how many drugs are simultaneously within the control of the defendant.’ Following the case law set out above, once the presence of the first controlled substance is proven, the offense is complete. ‘By applying the principles developed in our case law to the plain language of § 20-2-70(A), we thus find that the possession is the criminal offense, and our section does not sanction basing multiple prosecutions or sentences on the mere fact that several types of drugs were so possessed at one point in time.’ Vogel v. State, supra; *160 Tice v. State, 475 So.2d 589 (Ala.Crim.App.1984)
472 So.2d at 685. See also Sears v. State, 479 So.2d 1308 (Ala.Crim.App.1985).
Thereafter, looking to legislative intent, this Court in McClendon v. State, 513 So.2d 102 (Ala.Crim.App.1986), limited the holding in Vogel where McClendon was convicted of and separately sentenced for possession of marijuana for personal use (a misdemeanor) and possession of cocaine arising from a single possession. This Court reasoned that although the offense of possession of controlled substances[4] did not require proof of an element different from possession of marijuana[5] for personal use, so as to pass the test in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), it was nonetheless proper to impose separate sentences because
“[t]he Blockburger test is not a constitutional component of the Fifth Amendment Double Jeopardy Clause, Missouri v. Hunter, 459 U.S. [359] at 368, 103 S.Ct. [673] at 678 [ (1983) ], but is merely a ‘ “rule of statutory construction”, and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.’ Missouri v. Hunter, 459 U.S. at 367, 103 S.Ct. at 679 (quoting Albernaz v. United States, 450 U.S. at 340, 101 S.Ct. at 1143 (emphasis added by the Missouri v. Hunter Court)).”
McClendon v. State, 513 So.2d at 105. This Court distinguished the holding in Vogel as follows:
“ ‘In Vogel, the result was dictated by the legislature’s failure to explicitly state the unit of the offense; by the violation of a single provision of a statute which imposes no differentiating sentence; and by the consequence that elements of proof would have been the same had the conduct of possession been fragmented to form the basis of a separate charge.’ Sears v. State, 479 So.2d at 1313.
“As it applies to the facts of the case before us, Section 20-2-70(a) does state the unit of the offense, impose a differentiating sentence, and require different elements of proof for the offense of possession of marijuana for personal use. The proviso that ‘any person who possesses any marihuana for his personal use only is guilty of a misdemeanor and, upon conviction for the offense, shall be imprisoned in the county jail for not more than one year, and in addition, shall be fined not more than $1,000.00,’ clearly evidences a legislative intent to (1) limit the ‘unit of the offense’ to possession of marijuana which is for personal use only, (2) impose a different sentence from that provided for felony possession of other controlled substances, see Palmer v. State, supra, and (3) allow the defense of ‘personal use,’ whose elements of proof are unlike those of any other offense described in § 20-2-70(a). The misdemeanor offense outlined in the statute is clearly directed *161 to a ‘separate evil’ from the felony offenses described in § 20-2-70(a). Compare Ball v. United States [470 U.S. 856], 105 S.Ct. [1668] at 1673 [ (1985) ] (statutes prohibiting receipt of a firearm by a convicted felon and possession of a firearm by a convicted felon not ‘directed to separate evils’) with United States v. Woodward [469 U.S. 105], 105 S.Ct. [611] at 613 [ (1985) ] (statutes prohibiting the making of a false statement to a governmental agency and the failure to report bringing in large amounts of currency to the U.S. are ‘directed to separate evils’).”
McClendon v. State, 513 So.2d at 105-06.
However, § 20-2-70(a) was repealed by Ala. Acts 1987, Act No. 87-603, § 12, effective October 21, 1987. It was replaced by § 13A-12-212(a)(l), Ala. Code 1975, which states: “(a) A person commits the crime of unlawful possession of controlled substance if: (1) Except as otherwise authorized, he possesses a controlled substance enumerated in Schedules I through V.” Thus the clear language was changed so that the prohibition is now against the possession of “a controlled substance” in the singular.
Following the adoption of this statute, this Court in Washington v. State, 568 So.2d 413 (Ala.Crim.App.1990), held that when Washington pleaded guilty to the possession of both marijuana and cocaine arising out of the same incident, she could be sentenced to two concurrent sentences. Despite her reliance on Vogel, this Court held that because the possessions fell under different statutes, they constituted separate offenses.
Thereafter, in Hollaway v. State, this Court determined that separate convictions on two counts of unlawful possession of a controlled substance, arising out of the seizure of two types of controlled substances, Xanax and methamphetamine, from Hollaway’s home, violated double-jeopardy principles. Hollaway had been sentenced to concurrent five-year sentences for these convictions, which sentences were split to serve two years’ incarceration, with the balance suspended followed by five years of probation. This Court determined that “although the indictment purported to allege separate offenses, it instead alleged alternative methods of committing the same offense.” Hollaway v. State, 979 So.2d at 844. After citing Vogel, this Court further opined:
“Because the statutory requirements constituting possession of a controlled substance pursuant to § 13A-12-212, Ala.Code 1975, contain the same elements for possession of methamphetamine and possession of Xanax, and both substances were seized by virtue of the same search, the possession of both drugs represented one single act of possession. Here, the unit of prosecution was the act of possessing any controlled substance, and the fact that law-enforcement officials discovered two different controlled substances in Hollaway’s safe did not establish evidence of two separate offenses. By splitting this single act into separate offenses, Hollaway’s double-jeopardy rights were violated, and the jurisdiction of the trial court to enter a judgment on both counts was implicated. See, e.g., Ex parte Robey, 920 So.2d 1069, 1071 (Ala.2004); McPherson v. State, 933 So.2d 1114 (Ala.Crim.App.2005).”
Hollaway v. State, 979 So.2d at 844-45. Therefore, this Court held that Hollaway should have been convicted of a single offense of possession of a controlled substance and been sentenced for one offense.
The language that the legislature chose to change in enacting § 13A-12-212(a)(1), Ala.Code 1975, is most important in glean *162 ing legislative intent as to the purpose and effect of the statute.
“The appropriate inquiry in a case like this, involving criminal proceedings under intrinsically related controlled substances statutes, asks what ‘unit of prosecution’ was intended by the Legislature as the punishable act. See Commonwealth v. Donovan, 395 Mass. 20, 28-29, 478 N.E.2d 727 (1985); Commonwealth v. Gurney, 13 Mass.App.Ct. 391, 401, 433 N.E.2d 471 (1982). The inquiry requires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant’s favor. See Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955); Commonwealth v. Donovan, supra at 29, 478 N.E.2d 727.”
Commonwealth v. Rabb, 431 Mass. 123, 128, 725 N.E.2d 1036,1041 (2000).
When the legislature changed the language of the statute from prohibiting the possession of “controlled substances,” § 20-2-70(a), Ala.Code 1975, to prohibiting the possession of “a controlled substance,” the singular article “a” was added to limit or qualify the controlled substance. More importantly, the word “a” is used to quantify the controlled substance. When looking to legislative intent, the word “a” takes on a particular meaning in establishing the unit of prosecution.
“ ‘ “How, then, should the unit of prosecution be described so that an intent to allow multiple convictions is clear and unequivocal? Instead of using the word ‘any’ to describe the unit of prosecution, the singular words ‘a’ or ‘another’ should be used. An examination, then, should be made of the Alabama Criminal Code to see how the unit of prosecution is described. This examination will disclose whether the code allows multiple convictions.” ’ ”
Girard v. State, 883 So.2d 717, 723 (Ala.2003) (referring to a prosecution for possession of obscene material under the statute using the term “any”).
By changing the statutory language from setting no quantitative requirement as to the controlled substances possessed to specifically making the offense proscribe the possession of “a” controlled substance, the legislative intent was to mirror the statutory trafficking requirement that each type of controlled substance is to be treated separately.
A number of jurisdictions have similarly concluded that the possession of different types of controlled substances should result in separate convictions and sentences. In Cunningham v. State, 318 Md. 182, 567 A.2d 126 (1989), the Maryland Supreme Court opined:
“The article ‘a’ and the word ‘any' have the same meaning in this context. In the definition section, ‘controlled dangerous substance’ means ‘any’ drug, substance, or immediate precursor in Schedules I through V. Article 27, § 277(f). We perceive this language to be deliberate, and to demonstrate the intention of the legislature to regulate each controlled dangerous substance, and to authorize a separate conviction for the possession of each substance....
“Moreover, we believe the prevailing mood of the Maryland General Assembly with respect to illegal drug activity is identical with that earlier attributed to Congress by the Supreme Court.
“ ‘[T]he history of the narcotics legislation in this country ‘reveals the determination of Congress to turn the screw of the criminal machinery — de *163 tection, prosecution and punishment— tighter and tighter.’
“Albernaz v. United States, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981), quoting in part from Gore v. United States, 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958).”
Cunningham v. State, 318 Md. at 188-89, 567 A.2d at 129. The Court in Cunningham referenced the following cases as following the same holding:
“In re Hayes, 70 Cal.2d 604, 75 Cal.Rptr. 790, 451 P.2d 430 (1969) (discussing, in dictum, prior cases holding multiple punishment for simultaneous possession of narcotic drugs not precluded); but cf. In re Adams, 14 Cal.3d 629, 122 Cal.Rptr. 73, 536 P.2d 473 (1975) (multiple punishment rule invoked in drug possession cases has no application where defendant possesses the drugs for the purpose of accomplishing only a single criminal objective); Tabb v. State, 250 Ga. 317, 297 S.E.2d 227 (1982) (simultaneous possession of each of the controlled substances listed in a single schedule is a separate offense for which the legislature meant to impose punishment); State v. Meadors, 177 Mont. 100, 580 P.2d 903 (1978) (legislature did not intend to treat all prohibited drugs as a generic drug or unit, but meant to provide a distinct crime for possessing each different type of prohibited drug); State v. Collier, 567 S.W.2d 165 (Tenn.1978) (possession with intent to sell two or more controlled substances classified within the same schedule of the Act constitutes separate and distinct offenses); Melby v. State, 70 Wis.2d 368, 234 N.W.2d 634 (1975) (simultaneous possession of three dangerous drugs supports three convictions and sentences); State v. Williams, 542 S.W.2d 3 (Mo.App.1976) (simultaneous possession of heroin and marihuana, both Schedule I controlled substances, justifies two convictions and sentences); State v. Horton, 75 N.C.App. 632, 331 S.E.2d 215 (1985) (simultaneous possession of cocaine and heroin justifies separate convictions and punishment); Bogue v. State, 556 P.2d 272 (Okla.Crim.1976) (dictum — possession of two different drugs would constitute two separate offenses); State v. Ness, 54 Or.App. 530, 635 P.2d 1025 (1981) (separate convictions for simultaneous possession of separate controlled substances would be permitted, but marihuana, hashish and hashish oil are all classified as the single substance of marihuana under Oregon law); State v. Adams, 364 A.2d 1237 (Del.Super.Ct.1976) (legislature intended to apply the statutory prohibition to individual substances, thereby creating a separate crime with respect to each forbidden substance).”
Cunningham v. State, 318 Md. at 190-91, 567 A.2d at 130. See also United States v. Vargas-Castillo, 329 F.3d 715, 721-22 (9th Cir.2003) (distinguishing the ambiguity of intent caused by the use of the word “any” rather than “a” and stating: “In this case, on the other hand, the statutes under which Vargas was convicted define the object of the offense as ‘a controlled substance.’ 21 U.S.C. §§ 841(a)(1), 960(a)(1). By prefacing the objects of the offense with ‘a,’ sections 841(a)(1) and 960(a)(1) express an unambiguous congressional intent to make each controlled substance a unit of prosecution. See United States v. Alverson, 666 F.2d 341, 347 (9th Cir.1982). ‘Use of the article “a” stands in marked contrast to language in other [] statutes that have been interpreted to preclude prosecution for each object of the offense.’ Id. Unlike ‘any,’ the article ‘a’ cannot be said to fully encompass plural activity. Cf. Brown [v. United States], 623 F.2d [54] at 58 [ (9th Cir. 1980) ]. Rather, it encom *164 passes singular, individualized activity and unambiguously defines the unit of prosecution in singular terms. See id,.”).
Similarly, different controlled substances cannot be aggregated for purposes of determining the amount of a controlled substance to support a trafficking charge. § 13A-12-231, Ala.Code 1975. See Washington v. State, 818 So.2d 411 (Ala.Crim.App.1998), affirmed, 818 So.2d 424 (Ala.2001) (addressing a claim of equal protection for a trafficking offense involving mixtures of marijuana and mixtures of cocaine and stating: “Here, the substances in question clearly have different physical characteristics, and the different definitions of ‘mixture,’ therefore, are rationally related to the government’s objective of prohibiting trafficking in particular quantities or mixtures of the two drugs.”). The controlled substance must be the same even if found in more than one location. Townsend v. State, 823 So.2d 717, 720 (Ala.Crim.App.2001) (“ ‘[Sjeparate prosecutions for possession of a controlled substance ... do not offend double jeopardy principles, as long as the amount of the specific controlled substance supporting each conviction constitutes a “separate item” that is sufficiently differentiated by time, location, or intended purpose. Nothing ... precludes a prosecutor from combining two quantities of a specified controlled substance possessed by a defendant at different locations in order to prosecute him on a more serious offense.... The procedure of aggregating separate quantities of a specific controlled substance to bring one criminal charge is frequently used.’ ”). Thus, the legislature has been aware of the differences in particular controlled substances and the need to treat them differently.
The federal courts have also held that the simultaneous possession of different drugs results in multiple convictions:
“In this circuit, the simultaneous possession of different controlled substances constitutes separate offenses under 21 U.S.C. § 841(a) for which multiple sentences may be imposed. See United States v. Davis, 656 F.2d 153, 156-60 (5th Cir. Unit B Sept.1981) (involving defendant convicted of two counts of possession of a controlled substance under § 841(a), one count for marijuana dnd one count for qualudes, which resulted in consecutive sentences). The law has long drawn distinctions between crack cocaine and powder cocaine. See, e.g., 21 U.S.C. § 841(b)(1)(A)(ii)(II) & (b)(1)(A)(iii); U.S.S.G. § 2D1.1(c); United States v. Sloan, 97 F.3d 1378, 1381-84 (11th Cir.1996) (explaining the chemical distinctions between crack cocaine and powder cocaine and concluding that the provisions of § 841(b) and U.S.S.G. § 2D1.1 imposing more severe penalties for crack cocaine do not violate the equal protection prong of the Due Process Clause); United States v. Terry, 60 F.3d 1541, 1544-45 (11th Cir.1995) (explaining that Congress distinguished between crack cocaine and powder cocaine because ‘crack cocaine is more dangerous, more highly addictive, more easily available, and less expensive than powder cocaine’ and finding that the harsher penalties in § 841(b) for crack cocaine do not violate the Equal Protection Clause).”
U.S. v. Thompson, 171 Fed.Appx. 823, 829 n. 2 (11th Cir.2006)(not selected for publication in the Federal Reporter).
The type of controlled substance is not a method of the commission of the offense as has been previously held. Hollaway v. State, 979 So.2d at 844 (“[Although the indictment purported to allege separate offenses, it instead alleged alternative methods of committing the same offense.”). Rather, it is a necessary element to the offense that must be proved, as opposed to, for instance, the means of *165 committing murder; such means can be varied (stabbing, strangling, shooting) and proof of the means is not necessary to the prima facie case. Moreover, the combination of these means still results in only one murder. The specific controlled substance must be proved to satisfy the prima facie case, and the distinction in identifying the controlled substance is necessary as outlined by the schedules. See § 20-2-20(a), Ala.Code 1975 (requiring the State Board of Health to make a determination as to which substances should be included in each schedule, considering the following: “(1) The actual or relative potential for abuse. (2) The scientific evidence of its pharmacological effect, if known. (3) The state of current scientific knowledge regarding the substance. (4) The history and current pattern of abuse. (5) The scope, duration, and significance of abuse. (6) The risk to the public health. (7) The potential of the substance to produce psychic or physiological dependence liability. (8) Whether the substance is an immediate precursor of a substance already controlled under this chapter.”).[6] The substances are thus controlled according to their potential for abuse. § 20-2-20(b), Ala.Code 1975. See also § 13A-12-216, Ala.Code 1975 (stating that, as to drug offenses, “[t]he Schedules I through V referred to in this division are the schedules contained in Sections 20-2-20 through 20-2-31, or in those schedules as revised and republished annually by the State Board of Health pursuant to Section 20-2-32”). See State v. Johnson, 714 S.E.2d 502 (N.C.App.2011). Therefore, because the holding in Hollaway v. State does not follow the language and intent of the statute, it is hereby overruled.
The possession of “a” controlled substance by a particular party addresses and pertains to the possession of the particular type of controlled substance; even if a number of varying types of controlled substances are found at approximately the same time,[7] and even if that type of controlled substance is found at the same approximate time in varying locations.
Because the statutory language is not ambiguous or susceptible of more than one meaning, the trial court properly adjudged Wells to be guilty of possessing each controlled substance and properly sentenced her for these convictions.
AFFIRMED.
WELCH, P.J., and WTNDOM, KELLUM, and JOINER, JJ., concur.

. The appellant is also referred to in the record as Jennifer Wells Crow, Jennifer Wells, and Jennifer Ann Wells-Davis. However, the indictment states her name as Jennifer Ann Wells.

. This Court, as well as the circuit court presiding over the case, has entertained motions to dismiss raising double-jeopardy grounds and/or contending that the indictment was multiplicitous or duplicitous on numerous occasions. See, e.g. Borden v. State, 711 So.2d 498, 501-02 (Ala.Crim.App.1997); Culver v. State, 22 So.3d 499, 511 (Ala.Crim.App.2008), cert. denied, 22 So.3d 530 (Ala.2009), cert. denied, Culver v. Alabama, — U.S. —, 130 S.Ct. 462, 175 L.Ed.2d 308 (2009); Girard v. State, 883 So.2d 717, 720 (Ala.2003); Smith v. State, 797 So.2d 503, 513 (Ala.Crim.App.2000), cert. denied, 797 So.2d 549 (Ala.2001), cert. denied, Smith v. Alabama, 534 U.S. 962, 122 S.Ct. 371, 151 L.Ed.2d 282 (2001); and Harris v. State, 563 So.2d 9 (Ala.Crim.App.1989).

. The tablets, however, were not discovered until later.

. Felony possession of a controlled substance "requires merely 'possession] [of] ... controlled substances.' Ala.Code § 20-2-70(a) (1975).” McClendon v. State, 513 So.2d at 104.

. "Misdemeanor possession of marijuana is established by proof of three elements not required by the felony offense of possession of cocaine: (1) the controlled substance was marijuana; (2) the marijuana was possessed for personal use only; and (3) the possession represented a first-time marijuana offense.” McClendon v. State, 513 So.2d at 104.

. Compare § 13A-7-8(a)(1) (defining burglar tools and making no distinctions) and § 13A-1-2(7) (defining deadly weapons and making no distinctions).

. Cf. United States v. Kennedy, (No.Crim. No. 2:06-00028, December 23, 2010)(D.N.J.2010) (not reported in F.Supp.2d)("As the Sixth Circuit has explained:
“ 'Generally, courts which have considered the issue have determined that separate convictions for possession of the same controlled substance will not violate the Double Jeopardy Clause if the possessions are sufficiently differentiated by time, location, or intended purpose. None of the legitimate bases for differentiating the [several] stashes of cocaine in this case appear to exist. The entirety of the police confrontation with Rashad occurred during the execution of the search warrant for his residence. Both quantities were located at his home and both were seized at essentially the same time and place.’ Rashad v. Burt, 108 F.3d 677 (6th Cir.1997) (discussing state and federal drug possession statutes)...; cf. United States v. Carter, 576 F.2d 1061, 1064 (3d Cir.1978) (holding that two Section 841(a) counts are not multiplici-tous where after making a sale of some heroin, the defendant still retained other heroin for potential future sales); United States v. Maldonado, 849 F.2d 522, 524 (11th Cir.1988) (holding that two Section 841(a) charges are not multiplicitous where each of two simultaneously held stashes of illegal drugs were located in separate counties).”).